E-FILED
Tuesday, 15 January, 2013  02:58:05 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

**DANIEL HATAWAY,**                     )
                                        )
    **Plaintiff,**                      )
                                        )   **Case No. 12-CV-2188**
    **v.**                             )
                                        )
**THE BOARD OF TRUSTEES**               )
**OF THE UNIVERSITY OF ILLINOIS,**      )
                                        )
    **Defendant.**                      )
                                        )

## OPINION

This case is before the court on Defendant's Motion to Dismiss (#11). On July 26, 2012, Plaintiff filed his first complaint against Defendant (#1). On September 12, 2012, Defendant filed a Motion to Dismiss (#6).  On October 1, 2012, Plaintiff filed an Amended Complaint (#10). On October 5, 2012, Defendant filed its updated Motion to Dismiss (Amended Complaint) (#11). On October 22, 2012, Plaintiff filed his Response (#13), and on October 26, 2012, Defendant filed its Reply (#16), following permission from this court (Text Order of October 25, 2012).

The court has reviewed the briefings and exhibits provided by the parties. This court has federal question jurisdiction pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Following this careful review, the Motion to Dismiss (#11) is DENIED.

## Background[1]

---

[1] Facts are taken from Plaintiff's allegations when not disputed by Defendant, and the exhibit provided, which includes the Investigation Report by the Illinois Department of Human Rights.

Plaintiff Daniel Hataway started working for Defendant University of Illinois in approximately January 2000 as extra help, and secured a permanent position as a shipping and receiving clerk in November 2001. In October 2004, Plaintiff allegedly suffered an on-the-job injury that eventually resulted in his inability to perform the essential functions of his job as a shipping and receiving clerk. Specifically, the position required him to frequently lift heavy objects weighing up to 70 pounds.

Plaintiff was diagnosed with idiopathic degenerative arthritis in both his wrists. At Defendant's request, Plaintiff applied for disability benefits on October 5, 2004. Defendant allegedly told Plaintiff that it would assist him in finding a position for which he could fulfill all the duties.  In December 2004, Plaintiff's physician released him to work as long as the work did not require strenuous activity or lifting or grasping objects weighing more than 20 pounds.

In February 2005, Plaintiff began receiving disability benefits. In June 2005, Plaintiff was placed on State Universities Retirement System ("SURS") disability leave. In September 2005, Defendant posted a vacancy for the position of a purchasing agent.

On March 7, 2006, Plaintiff filed a complaint with the Illinois Department of Human Rights (IDHR). An investigation was conducted. The investigative report found that Plaintiff alleged that when he attempted to apply for positions that he could perform, including the purchasing agent position, Defendant told him that he could not apply because he was currently on disability.

The investigative report also noted that Plaintiff responded that while he was on disability, he had provided a letter from his doctor that he only had a 20-pound lifting restriction, and that the purchasing agent position did not require any lifting duties not within his restrictions. In fact, Plaintiff had averred that the position has no physical requirements at all.

- 2 -

Further, Plaintiff alleged that he was more qualified to perform the duties required for the purchasing agent position than the non-disabled individual that Defendant actually hired. The investigative report concluded that 1) Defendant did not arrange any placement for Plaintiff after Plaintiff submitted his December 1, 2004 medical release showing that he could return to work with a 20-pound lifting restriction, in contravention of policy; 2) Defendant did not interview Plaintiff for the purchasing agent position; and 3) there was substantial evidence to suggest that the University failed to hire Defendant on the basis of his disability. Plaintiff's Amended Complaint includes three related counts. In the first, he alleges that Defendant discriminated against him by not employing him for the purchasing agent position, on the basis of his disability, in violation of 42 U.S.C. § 12112. The second and third counts allege the same acts, but premise liability on the basis of a record of disability, § 12102(1)(B); and on the basis of being regarded as having such an impairment, § 12102(1)(C).

## Analysis

Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint, not to decide the merits of the case. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, the allegations in the complaint must be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests,'" as well as "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'"

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering a motion to dismiss for failure to state a claim, the court is limited to the allegations in the pleadings, although "[i]n deciding a motion to dismiss for failure to state a claim [the court] may consider documents attached to or referenced in the pleading if they are central to the claim." *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). The court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *AnchorBank*, 649 F.3d at 614. Importantly, however, the court does not accept as true mere legal conclusions, unsupported by factual allegations, or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

Further, while Plaintiff is correct in that Rule 8a's notice pleading standard has not changed, *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010), his insistence on the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) is incorrect to the extent that the phrase has been deprecated by *Twombly* and its progeny. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("[T]his famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard."); *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir. 2007) ("In *Bell Atlantic*, the Supreme Court retooled federal pleading standards, retiring the oft-quoted Conley formulation that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

**A. Count I**

Defendant argues that Plaintiff has not sufficiently pled that he is disabled under the meaning of the ADA. This court disagrees. The ADA requires that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff must be able to show that she is a "qualified individual with a disability" in order to successfully prosecute an ADA claim. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). A "disability", for the purpose of Count I, is as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102. Major life activities include:

> caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

42 U.S.C. § 12102(2). Plaintiff intially argues that his diagnosis of idiopathic degenerative arthritis and his inability to lift or grasp objects weighing more than 20 pounds demonstrates that his major life activity of "performing manual tasks" is substantially limited and therefore, under the rubric of notice pleading and in light of all reasonable inferences that may be drawn in his favor, has adequately stated a claim.

Defendant does not contest that Plaintiff's physical condition limited his ability to lift objects at work. However, "[a]n impairment that interferes with work-related tasks. . . does not necessarily rise to the level of a disability within the meaning of the ADA." *Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002).[2] As Defendant correctly argues, "to be substantially

---

[2] Congress superseded *Williams* in passing the ADA Amendment Act of 2008 but these changes were made effective January 1, 2009 and Congress did not express its intent for them to apply retroactively.

limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). "When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Id.* at 200-01. Further, the mere medical diagnosis of an impairment is insufficient to qualify as a "disability". *Id.*

As a matter of ADA law existing at the time of the alleged discrimination in 2005, a claimant who merely had a medical restriction of lifting more than 20 pounds or frequently lifting or carrying objects weighing up to 10 pounds, and who could still brush her teeth, wash her face, bathe, tend her flower garden, fix breakfast, do laundry, and pick up around the house "did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual task disability as a matter of law." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 187-88; 202 (2002). *See also Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1319 (8th Cir. 1996) (noting that a 25-pound restriction, without more, was insufficient to constitute a significant restriction on ability to perform major life activities.)

Plaintiff also asseverates that "[d]ue to his arthritic wrists, Plaintiff was unable to grasp objects and could only lift objects by using his forearms." (#10 ¶ 15). He argues, in his Response, that this is sufficient to resist dismissal. Assuming this statement to be true, the

---

Because all the alleged acts took place before 2009, this opinion must look to the law in place prior to the amendments. *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 639 fn.2 (7th Cir. 2010); *Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 521 fn. 1 (7th Cir. 2009).

complete inability to grasp objects must certainly qualify as a substantial limitation on the major

life activity of performing manual tasks (not to mention lifting or working). This allegation is a

plausible effect of degenerative arthritis. However, Plaintiff also alleges that his physician

released him to work so long as the work did not require strenuous activity or lifting or grasping

objects weighing more than 20 pounds. (#10 ¶ 16). Defendant argues that combining these two

allegations, Plaintiff has effectively pled himself out of court. This court disagrees. While it does

seem strange that a doctor would release him to work with a 20 pound restriction, it is still

plausible, after drawing all the inferences in Plaintiff's favor, that he could have been afflicted

such that he was only unable adequately to grasp objects from time to time or in repeated

succession, even though he has not specifically pled facts indicating as much. Accordingly,

Defendant has pled just enough to proceed with his claim.


**B. Counts II and III**

In Count II, Plaintiff repeats his allegations from Count I, but premising liability on the

basis of a record of disability, § 12102(1)(B). In Count III, Plaintiff does the same, but on the

basis of being regarded as having a disability, or a perceived disability, § 12102(1)(C).


*1. Relation between claims made in EEOC discrimination charge*

Defendant argues that a plaintiff suing for unlawful discrimination cannot assert claims in

his lawsuit that were not included in his EEOC charge, *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d

1188, 1194 (7th Cir. 1992), with the only exception arising when the claim in the complaint can

reasonably be expected to grow out of the EEOC investigation, *Jones v. Res-Care, Inc.*, 613 F.3d

665, 670 (7th Cir. 2010). "This rule serves the dual purpose of affording the EEOC and the

employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employee some warning of the conduct about which the employee is aggrieved." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Furthermore, in matching the allegations in the EEOC complaint to those in the present complaint, this court must treat the EEOC complaint liberally "in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985).

Defendant argues that while the EEOC discrimination charge did not include a claim that Plaintiff was discriminated against because of a perceived condition, the present complaint does, and thus, "record of" liability and "regarded as" liability were not sufficiently pled in the EEOC charge. Defendant cites to *Burke v. Nalco Chem. Co.* in support of the proposition that "where a plaintiff alleges in an EEOC charge that he was discriminated against because of an actual disability, the plaintiff cannot assert 'regarded as' or 'record of' disability in a subsequent lawsuit." 96 C 981, 1996 WL 411456 at *5-6 (N.D. Ill. July 18, 1996). But Defendant misreads *Burke*. In *Burke*, the plaintiff's EEOC charge stated explicitly that she was discriminated against "on the basis of specific disabilities diagnosed in October, July, and December 1993." *Id.* at *6 (editing marks omitted). Then, in her lawsuit, she claims that she was discriminated against on the basis of some unspecified "misperceived" condition—conditions that were not stated as same as her previously-pled specific disabilities. *Id.* That court held, appropriately, that the discrimination alleged in the EEOC charge differed profoundly from the discrimination alleged in the complaint. *Id.*

Here, Plaintiff's EEOC charge alleges that he had degenerative arthritis and that Defendant discriminated against him based on that disability. More to the point, the EEOC

- 8 -

investigation itself was a record of Plaintiff's disability as well as evidence that the Illinois DHR regarded him as being disabled. In the present complaint, Plaintiff alleges the same. Although Defendant argues in its Reply that there is no reasonable relationship between an Illinois Human Rights Act finding of a "disability" and a medical condition that substantially limits a major life activity pursuant to the ADA, this court disagrees. Contrary to Defendant's assertions that this court may not consider Plaintiff's EEOC claim because it is not "central" to his claim, the DHR investigation specifically found that the Manager of Labor and Employee Relations

> told [Plaintiff] that if he did not apply for SURS disability then management would move forward with potential discipline and/or discharge. Ultimately, [Plaintiff] furnished documentation that made him eligible for SURS disability benefits.
>
> [* * *]
>
> The investigation revealed that [Defendant] was aware of [Plaintiff's] handicap.

(#13 exh. A, ¶ 13, p. 6). It is clear that Defendant had a record of Plaintiff's DHR claim and investigation. It is also clear that, under the DHR report, that Defendant was aware of Plaintiff's disability as defined under state law. It is not yet clear, however, whether Defendant was aware of Plaintiff's condition, if any, that would qualify him as having a disability under the ADA as it existed at the time. As Plaintiff argues, adopting Defendant's interpretation would make it impossible to sustain a charge in court that had not explicitly been stated in the EEOC charge, which is contrary to the liberal standard demanded by *Babrocky,* 773 F.2d at 864. This argument applies with equal strength to Defendant's argument that Plaintiff's "regarded as" Count III is not reasonably related to his EEOC charge.

Allowing these two claims to proceed also acknowledges that Plaintiff has satisfied the "dual purpose of affording the EEOC and the employer an opportunity to settle the dispute

through conference, conciliation, and persuasion, and of giving the employee some warning of the conduct about which the employee is aggrieved." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Regardless of whether there was a record of Plaintiff's disability or Defendant perceived him as having a disability, the same central underlying claim that Defendant failed to employ him in an alternate position following his permanent inability to perform the duties of a shipping clerk afforded the EEOC and Defendant the opportunity to settle the dispute as well as adequate notice of the conduct about which he was complaining. That is the same underlying claim as is presented here.

*2. Record of a condition that substantially limits a major life activity*

Defendant also argues that Plaintiff failed adequately to allege that he had an impairment that substantially limited a major life activity, and thus, there cannot be a record of such an impairment. As discussed earlier, this court find that Plaintiff has sufficiently—if only barely—pled enough to qualify as a disability under the ADA. Accordingly, Defendant's argument is not persuasive.

*3. Perception of disability*

Defendant also argues that Plaintiff failed to allege that Defendant believed that he was substantially limited in a major life activity. Defendant suggests that just because it considered Plaintiff to be "on disability" under the meaning of the word as used internally or according to the Illinois DHR investigation does not mean that those considerations are sufficient to qualify as a disability under the ADA definition. In support, Defendant cites to *Steffen v. Donahoe*, 680 F.3d 738 (7th Cir. 2012). However, *Steffen* was before the Court on summary judgment and

turned on the records and deposition testimony regarding the defendant's actual knowledge and

perceptions of, among other things, the extent of the plaintiff's injuries; whether the plaintiff was

capable of returning to full duty; and the seriousness of his injuries. It is still plausible that

Defendant considered Plaintiff to be disabled under the meaning of the ADA as well under the

DHR definition, given Plaintiff's allegations.


*4. Qualification for purchasing agent position*

Defendant also argues that Plaintiff did not allege he was qualified for the position for

which he was denied. That is clearly not true. Plaintiff alleged that he was qualified to perform

the duties of the purchasing agent (#10 ¶ 29). Simply because he is unfamiliar with all the

requirements does not make his allegation insufficient; "[m]ost details are more efficiently

learned through the flexible discovery process. . . . [R]equiring the plaintiff to plead those

unknown details before discovery would improperly deny the plaintiff the opportunity to prove

its claim." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 779-80 (7th Cir. 2007).


*5. "But for" causation*

Defendant also argues that Plaintiff failed to allege that "but for" his alleged disability, he

would have been hired as a purchasing agent. The court disagrees. Although Defendant is correct

that the Illinois DHR definition of "disability" is not coextensive with the ADA definition,

Defendant is splitting hairs at the 12(b)(6) stage, which this court is unwilling to do. Plaintiff has

alleged that he was "more qualified to perform the duties required of a purchasing agent than the

non-disabled individual Defendant actually hired," (#10 ¶ 29), and that "[b]ut for Plaintiff's

physical impairments, record of impairment or Defendant's express statement about Plaintiff's

disability he would have been able to apply for and be hired for the purchasing agent position,"

(#10 ¶ 30).


IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Dismiss (Amended Complaint) (#11) is DENIED.

(2) Defendant's Motion to Dismiss (#6) is MOOT.

(3) Defendant has 14 days to file its answer to Plaintiff's Amended Complaint (#10).

(3) This case is set for a Rule 16 scheduling hearing on March 12, 2013 at 2:00 p.m., before the undersigned.

ENTERED this 14th day of January, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE